JOHN L. HOLCOMB, JR, BAR ID #258175
jholcomb@khslaw.com
SHAHROKH SHEIK, BAR ID #250650
ssheik@khslaw.com
TAMMY WU, BAR ID #305890
twu@khslaw.com
KRAMER HOLCOMB SHEIK LLP
1925 Century Park East, Ste. 1180
Los Angeles, California 90067
Telephone: (310) 551-0600
Facsimile:  (310) 551-0601

Attorney for Plaintiff,
818 MEDIA PRODUCTIONS, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 818 MEDIA PRODUCTIONS, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a national association; WELLS FARGO ADVISORS, LLC, a Delaware limited liability company; BENJAMIN RAFAEL, an individual; HERNAN BERMUDEZ, an individual; WEATHERVANE PRODUCTIONS, INC., a Nevada Corporation; JASON VAN EMAN, an individual; FOREST CAPITAL PARTNERS, INC., a Florida Corporation; BENJAMIN MCCONLEY, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2-16-cv-09427-PSG (PLAx)<br><br>Hon. Philip Gutierrez<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1. **Fraud and Intentional Deceit (Count 1);**<br>2. **Fraud and Intentional Deceit (Count 2);**<br>3. **Fraud and Intentional Deceit (Count 3);**<br>4. **Negligent Misrepresentation;**<br>5. **Unfair Business Acts Under California *Business & Professions Code* § 17200;**<br>6. **Breach of Contract; and**<br>7. **Conversion**<br>8. **Aiding and Abetting Conversion**<br><br>**[DEMAND FOR JURY TRIAL]** |

COMES NOW Plaintiff, 818 MEDIA PRODUCTIONS, LLC, a Delaware

Limited Liability Company, for causes of action against Defendants, WELLS FARGO

BANK, N.A., a national association; WELLS FARGO ADVISORS, LLC, a Delaware limited liability company; BENJAMIN RAFAEL, an individual; HERNAN BERMUDEZ, an individual; WEATHERVANE PRODUCTIONS, INC., a Nevada Corporation; JASON VAN EMAN, an individual; FOREST CAPITAL PARTNERS, INC., a Florida Corporation; BENJAMIN MCCONLEY, an individual, and DOES 1 through 50, inclusive, that complains and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over all Defendants because, upon information and belief, each party is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render this Court's jurisdiction over it consistent with traditional notions of fair play and substantial justice.

2. Venue as to each Defendant is proper in this judicial district, because the contract at issue was entered into in the County of Los Angeles. Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, own or maintain offices in the County of Los Angeles, transact business there, have an agent or agents within the County of Los Angeles, or are otherwise found within the County of Los Angeles.

## THE PARTIES

3. At all times mentioned herein, Plaintiff, 818 MEDIA PRODUCTIONS, LLC (hereinafter "818M"), is a Delaware Limited Liability Company organized and existing under the laws of the state of Delaware, with its principal place of business in Los Angeles County, State of California.

4. At all times mentioned herein, Defendant WELLS FARGO BANK, N.A. (hereinafter "WFB") is, upon information and belief, a national association, with numerous offices and a significant presence in Los Angeles County, State of California. At all times alleged herein WFB has and does conduct business in and purposefully avails itself of the jurisdiction of the County of Los Angeles, State of California.

2

5.    At all times mentioned herein, Defendant WELLS FARGO ADVISORS, LLC (hereinafter "WFA") is, upon information and belief, a Delaware Limited Liability Company, with numerous offices and a significant presence in Los Angeles County, State of California.  At all times alleged herein WFA has and does conduct business in and purposefully avails itself of the jurisdiction of the County of Los Angeles, State of California.

6.    Upon information and belief, Wells Fargo & Company, a Delaware Corporation (not a party to this lawsuit), purposefully created a multifaceted corporate structure, including a financial advisory branch, WFA, and a banking branch, WFB. Upon information and belief, WFA and WFB are wholly controlled by Wells Fargo & Company.  Upon information and belief, WFA and WFB employees customarily and regularly interact with each other, and conduct business between their sister entities, for the benefit of their parent, Wells Fargo & Company.

7.    At all times mentioned herein, Defendant BENJAMIN RAFAEL (hereinafter "RAFAEL") is, upon information and belief, an individual residing in the State of Florida, and was, at all times alleged herein, upon information and belief, an agent, officer and manager with WFA and WFB, acting for the benefit of both entities per the instruction of parent, Wells Fargo & Company.  At all times alleged herein RAFAEL has and does conduct business in and purposefully avails himself of the jurisdiction of the County of Los Angeles, State of California.

8.    At all times mentioned herein, Defendant HERNAN BERMUDEZ (hereinafter "BERMUDEZ") is, upon information and belief, an individual residing in the State of Florida, and was, at all times alleged herein, upon information and belief, an agent, officer and manager with WFA and WFB, acting for the benefit of both entities per the instruction of parent, Wells Fargo & Company.  At all times alleged herein BERMUDEZ has and does conduct business in and purposefully avails himself of the jurisdiction of the County of Los Angeles, State of California.

9.    At all times mentioned herein, RAFAEL and BERMUDEZ were co-

3

employees and agents of WFA and WFB, two entities wholly controlled by parent Wells Fargo & Company.  As described herein, RAFAEL and BERMUDEZ acted jointly on behalf of WFA and WFB to secure Plaintiff's transfer of funds into a WFB account.  RAFAEL and BERMUDEZ in their role as financial advisors through WFA directed Plaintiff to deposit funds in a WFB account.  Upon information and belief, RAFAEL and BERMUDEZ, and all similarly situated employees of WFA were a part of a larger Wells Fargo & Company corporate structure which controlled both WFA and WFB, and RAFAEL and BERMUDEZ thus acted jointly for the benefit of both WFA and WFB at all times herein alleged.

10.   At all times mentioned herein, Defendant WEATHERVANE PRODUCTIONS, INC.  (hereinafter "WVP") is, upon information and belief, a Nevada Limited Liability Company, which at all times alleged herein has and does conduct business in and purposefully avails itself of the jurisdiction of the County of Los Angeles, State of California.

11.   At all times mentioned herein, Defendant JASON VAN EMAN (hereinafter "VAN EMAN") is, upon information and belief, an individual residing in the State of Oklahoma, and was, at all times alleged herein, upon information and belief, an agent, officer and manager with WVP.  At all times alleged herein VAN EMAN has and does conduct business in and purposefully avails himself of the jurisdiction of the County of Los Angeles, State of California.

12.   At all times mentioned herein, Defendant FOREST CAPITAL PARTNERS, INC. (hereinafter "FCP") is, upon information and belief, a Florida Corporation, which at all times alleged herein has and does conduct business in and purposefully avails itself of the jurisdiction of the County of Los Angeles, State of California.

13.   At all times mentioned herein, Defendant BENJAMIN MCCONLEY (hereinafter "MCCONLEY") is, upon information and belief, an individual residing in the State of Florida, and was, at all times alleged herein, upon information and belief, an

4

agent, officer and manager with FCP.  At all times alleged herein MCCONLEY has and does conduct business in and purposefully avails himself of the jurisdiction of the County of Los Angeles, State of California.

14.    The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 50, inclusive, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names.  When the true names and capacities of said Defendants are ascertained, Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities.  Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a DOE is responsible in some manner for each other Defendants' acts and omissions and for the resulting injuries and damages to Plaintiff, as alleged herein.

15.    Plaintiff is informed and believe, and thereon allege, that at all times mentioned herein, Defendants and DOES 1 through 50, inclusive, and each of them, were agents, servants, employees, successors in interest, and/or joint venturers of their co-Defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture.

## GENERAL ALLEGATIONS

16.    Plaintiff is informed and believes, and thereon alleges, that Defendants, including DOES 1 through 50, inclusive, were agents, servants, employees, successors in interest, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment and/or venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer.

## STATEMENT OF FACTS

17.    On or about March 30, 2015, VAN EMAN acting on behalf of, as an agent of, and with the authority of Defendants WVP, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ, approached Plaintiff 818M and made material

5

misrepresentations which induced Plaintiff to enter into a co-financing agreement for a film, Inside Game (hereinafter "Film").

18.   During the March 30, 2015 conversation, numerous misrepresentations were made to 818M members Michael Pierce and Paul Martino about the credibility of WVP and FCP, and the assets maintained by WVP and FCP with WFA and WFB.

19.   Commencing in March, 2015, WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ all represented to Plaintiff that WVP and FCP were legitimate film financing companies that maintained credible accounts and significant assets with WFA and WFB.

20.   Based upon Defendants' misrepresentations, Plaintiff entered into a written financing agreement with FCP and WVP dated May 14, 2015 (hereinafter "Funding Agreement," attached to FAC as Exhibit "A").   Exhibit "B" to the Funding Agreement contained a specific representation by WFB which stated: "FCP's assets held by Wells Fargo Private Bank are liquid cash backed assets.  These assets are but not limited to certificate of deposits, capital in savings accounts and money markets, mutual funds, stocks and bonds, accounts receivable, demand and time deposits.  As a family office there is not one set of assets that are utilized as collateral for the Line of Credit, but a large grouping of several families' assets that are held and managed by Wells Fargo Private Bank.  As such any number of assets can and will be used to be the collateral for the Lines of Credit.  In all cases Wells Fargo Private Bank treats the assets as cash."  (See Exhibit "B" to Funding Agreement (Exh. "A" to FAC)).

21.   Pursuant to the Funding Agreement, Plaintiff was instructed to and did deposit $1,250,000 into the following account: Wells Fargo Bank, 420 Montgomery Street, San Francisco, CA 94104, Account Number 1644585075, Account Name: FORREST CAPITAL & CO.  Pursuant to the Funding Agreement, Defendants FCP and WVP were to provide matching contributions with collateral over which WFB had a security interest.

22.   After Plaintiff deposited funds into the WFB account, WFB and its

6

representative RAFAEL, acting in his role as an agent and employee of WFB, and acting on behalf of WFB, made affirmative representations to Plaintiff that matching funds by FCP and WVP were received and in the WFB account.

23.    On June 2, 2015, RAFAEL sent an e-mail from his WFB e-mail address, Banjamin.Rafael@wellsfargo.com to Plaintiff stating: "Please use this e-mail to confirm with your team that the US $1.25M has been received, Forrest Capital has matched the contribution and the funds are in the master account.   We are finishing up the requirements and have been delayed briefly as Mr. McConley was tied up with some family issues that I believe he shared.  **We are finalizing a few small things that we the bank need before we can send out the cards**.  Mr. McConley and I are meeting just after the branch closes so we can finalize those requirements.  We will email you the signature cards tomorrow.  Please know that all is in line and set and that the delays were compounded by the partners being in Cannes.  We appreciate your patience in this matter.   Benjamin Rafael, Personal Banker."   (See Exhibit "B" to FAC, emphasis added).

24.    In response to this e-mail, on June 2, 2015 at 2:49 p.m., VAN EMAN forwarded this e-mail to Plaintiff's representatives stating: "Mike, Rene – Benjamin Rafael, our banker just sent this email to Terry and myself as he only had Terry's e-mail.  I wanted to make sure all parties had it so that they know where we are and that we are solid.  I truly apologize about the timing.  This caught us at the absolute worst time, with Cannes, funding 9 projects, and Ben dealing with some family issues.  I am on them and have been pressing them.  We will finalize everything tomorrow and be done.  Please note that we are good on the match and timing, the only outstanding is the cards."  (See Exhibit "C" to FAC).

25.    WFB and RAFAEL thereafter, on or about June 2, 2015, sent signature cards / Authorization for Information and Certificate of Authority to Plaintiff which were signed and returned to WFB on June 4, 2015.  (See Exhibit "D" to FAC).

26.    Unbeknownst to Plaintiff, WVP, VAN EMAN, FCP, MCCONLEY, WFB,

WFA, RAFAEL, and BERMUDEZ knew all along that there was to be no matching contribution of Plaintiff's capital.  Instead, Defendants removed the entire amount of Plaintiff's contribution from the WFB account for their own benefit and refused to return it.

27.    WFB profited by having such a large sum of money in their account after it was deposited by Plaintiff.  Through its representatives RAFAEL and BERMUDEZ, WFB aided and assisted in the removal of Plaintiff's funds.

28.    WFA profited by directing such a large sum of money into the account of its corporate affiliate, WFB.  Upon information and belief, WFA was compensated for having its advisors, RAFAEL and BERMUDEZ, source funds into the WFB account.  Through its representatives RAFAEL and BERMUDEZ, WFB aided and assisted in the removal of Plaintiff's funds.

29.    On September 14, 2015, MCCONLEY and RAFAEL had a phone conversation with Plaintiff's representative Michael Pierce wherein RAFAEL and MCCONLEY stated that a total amount of $2.5 million (including the WVP/FCP contribution) existed and was in the secure San Francisco WFB account.  This conversation was followed up by an e-mail from MCCONLEY and RAFAEL to Plaintiff's representative Michael Pierce, cc'ing HERNAN BERMUDEZ at hernan.bermudez@wellsfargo.com stating: "I am working to close our line and set up for funding.  I need you to allow me to finish and reach out to one of my bankers which assist us with closings.  Mr. Hernan Bermudez is one of three relationships helping me. I will set up a call with you as soon as I have a response of their availability.  Your patience is appreciated and we are on track for the first contribution by the close on Wednesday."  (See e-mail dated September 14, 2015, Exhibit "E" to FAC.)

30.    BERMUDEZ, acting on behalf of WFB, responded to the above referenced e-mail stating: "We can touch base in the morning regarding our schedule…." (See Exhibit "F" to FAC.)

31.    Plaintiff's representative Terry Leonard spoke verbally with RAFAEL after

8

receipt of this BERMUDEZ e-mail, and was again told by RAFAEL that the funds were present and secure in the WFB account. Mr. Leonard then responded to BERMUDEZ' e-mail at 9:25 a.m. on September 16, 2015 stating: "Hernan I just spoke to your colleague Benjamin who confirmed verbally the amount in the account. What we need tomorrow from you, is an e-mail showing proof that there is $2,513,320.02 in the account. Please send that ASAP." (See Exhibit "G" to Complaint). However, BERMUDEZ never responded to Plaintiff.

32. Instead, VAN ENAM, cc'ing BERMUDDEZ at his @wellsfargo.com e-mail address, responded on September 16, 2015 at 10:30 a.m. stating: "Thanks Terry. Ben is signing of on things currently." (Exhibit "G").

33. Unbeknownst to Plaintiff, WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ knew all along that there was to be no matching contribution of Plaintiff's capital. Instead, Defendants removed the entire amount of Plaintiff's contribution from the WFB account and refused to return it.

34. Plaintiff is not the only victim of the herein described scheme of Defendants, which WFB and WFA have had knowledge of since at least 2014. Since 2014, some combination of Van Eman, McConley, and FCP have been sued in numerous actions involving BERMUDEZ and RAFAEL. Other lawsuits include *Anthony Buzbee v. Weathervane Productions, Inc.,* et al., Case No. 4:14-cv-03431 (S.D. Tx. Oct. 2, 2014); *Dane A. Miller v. Benjamin Forrest McConley*, Case No. 0:14-cv-62449-WPD (S.D. Fla. Oct. 28, 2014); *James Thomas Productions, Inc. v. Weathervane Productions, Inc. et al*; No. BC569062 (Cal. Super. Ct. Jan. 12, 2015); *Superhuman Int'l Pty Ltd. v. McConley, et al.*, No. 1:15-cv-22690-CMA (S.D. Fla. July 15, 2015); *Adana Investing, Inc., v. Forrest Capital Partners, Inc., et al.*, No. 1:15-cv-24038 (S.D. Fla. Nov. 25, 2015); *Koetting v. Van Eman et al.*, No. 3:2016- cv-00461 (S.D. Cal. Feb. 19, 2016); *Adana Investing Inc., v. Wells Fargo Bank, N.A., et al.*, No. 1:16- cv-21562-UU (S.D. Fla. May 2, 2016); *SSC North America LLC v. Forrest Capital Partners, Inc., et al.*, No. 16-026097-CA-01 (Fla. Cir. Ct. Oct. 10, 2016); *Baker Film Fund, LLC v.*

*Weathervane Productions, Inc., et al.*, No. 2:16-cv-07979-PSG (C.D. Cal. Oct. 26, 2016); and *Aldamisa Entertainment, LLC v. Wells Fargo Bank, N.A., No.: 2016-028537-CA- 01-Arzola* (Fla. 11th Cir. Nov. 14, 2016).

35.    WFA and WFB and their employees were involved in each of the loans that precipitated these lawsuits.  In addition to the active participation of their officers and employees in the FCP parties' conversion of other victim's funds, WFA and WFB have been on actual notice of the allegations of fraud and conversion against FCP by virtue of being named defendants in the *Buzbee* case, supra.  On November 19, 2014, WFA and WFB were added as defendants in the *Buzee* case, supra.

36.    Despite the actual knowledge of WFB and WFA that FCP was using accounts in the names of FCP to defraud lenders and convert funds, WFB and WFA failed to sever its relationships with FCP and McConley, close their accounts in a timely manner, and/or prevent FCP and McConley from opening new accounts with WFB.

## FIRST CAUSE OF ACTION

## [FRAUD AND INTENTIONAL DECEIT (COUNT 1)]

## (By Plaintiff against WVP, VAN EMAN, FCP, MCCONLEY, and DOES 1 through 50, inclusive)

37.    Plaintiff re-allege and incorporate s herein by reference each and every allegation and statement contained in the prior paragraphs.

38.    Commencing in March, 2015, Defendants WVP, VAN EMAN, FCP, MCCONLEY, and DOES 1 through 50, inclusive, and each of them, made the following misrepresentations of material fact to Plaintiff and Plaintiff's representatives:

      a.    Defendants WVP and FCP were legitimate film finance companies that were engaged in the business of co-financing films;

      b.    Defendants WVP and FCP were interested in co-financing the Film with Plaintiff;

      c.    Defendants WVP and FCP maintained credible accounts with WFB

      d.    Defendants WVP and FCP maintained significant assets in their WFB

accounts;

e.  Defendants WVP and FCP had utilized WFB accounts to co-finance numerous films;

f.  WFB intended to financially back the obligations of WVP and FCP under the Funding Agreement;

g.  WFB had previously facilitated joint-contributions for film financing agreements involving FCP and WVP;

h.  WFB would keep all funds deposited into the joint-account maintained in San Francisco secure;

i.  WFB would not allow any withdrawal from the joint-account maintained in San Francisco without the written consent of Plaintiff;

j.  WFB maintained a total of $2,513,320.02 in the San Francisco account designated to be for the benefit of the Film.

39.  Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants DOES 1 through 50, inclusive, authorized or ratified Defendants WVP, VAN EMAN, FCP, and MCCONLEY'S careless, negligent, reckless, and malicious conduct by failing to inform, notify, or report to PLAINTIFF or its agents, servants, employees, successors in interest, and/or joint venturers of the aforelisted misrepresentations of material fact made by Defendants WVP, VAN EMAN, FCP, and MCCONLEY.

40.  The aforelisted misrepresentations of material fact made by Defendants, and each of them, were in fact false.

41.  When Defendants made the aforelisted misrepresentations of material fact, they knew them to be false and made these representations with the intent to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance thereon in the manner herein alleged, or with the expectation Plaintiff would so act.

42.  Plaintiff, at the time the aforelisted misrepresentations of material fact were made by Defendants, and at the time Plaintiff took the actions herein alleged, were

ignorant of the falsity of the aforelisted misrepresentations of material fact made by Defendants and believed them to be true.   In reliance on the aforelisted misrepresentations of material fact, Plaintiff were induced to and did enter into agreements with Defendants, place money in the designated San Francisco WFB bank account, and provided investment for the Film.  Had Plaintiff known the actual facts, Plaintiff would not have taken such actions, nor made any investments.

43.   Plaintiff's reliance on the aforelisted misrepresentations of material fact made by Defendants was justified because Plaintiff was ignorant of the falsity of said misrepresentations of material fact.

44.   As a direct and proximate cause of the unlawful acts and conduct alleged herein, Plaintiff has been damaged in an amount to be proven at trial.

45.   The outrageous conduct of Defendants WVP, VAN EMAN, FCP, MCCONLEY, and DOES 1 through 50, inclusive, and each of them, as described herein, was done with malice, fraud, and/or oppression and with a willful and conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive and/or exemplary damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### [FRAUD AND INTENTIONAL DECEIT (COUNT 2)]

**(By Plaintiff against WELLS FARGO ADVISORS, LLC, BENJAMIN RAFAEL, HERNAN BERMUDEZ, and DOES 1 through 50, inclusive)**

46.   Plaintiff re-allege and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

47.   Upon information and belief, Wells Fargo & Company, a Delaware Corporation (not a party to this lawsuit), purposefully created a multifaceted corporate structure, including a financial advisory branch, WFA, and a banking branch, WFB. Upon information and belief, WFA and WFB are wholly controlled by Wells Fargo & Company.  Upon information and belief, WFA and WFB employees, including

specifically BENJAMIN RAFAEL and HERNAN BURMUDEZ customarily and regularly interact with each other, and conduct business between their sister entities, for the benefit of their parent, Wells Fargo & Company.

48.     Wells Fargo & Company offers private banking and wealth management services to high net worth clients through its Wells Fargo Private Bank segment.

49.     Both WFA and WFB provide services to clients of the Wells Fargo Private Bank segment.

50.     WFA offers and provides brokerage products and finical advising for clients of Wells Fargo Private Bank.

51.     Defendant HERNAN BERMUDEZ has since February 2011, and at all times herein alleged, been a licensed broker registered with FINRA through WELLS FARGO ADVISORS.  At all relevant times herein alleged, BERMUDEZ was an agent, officer, and manager with WFA and WFB, acting for the benefit of both entities per the instruction of parent, Wells Fargo & Company.   BERMUDEZ was employed by and/or acted as an agent of WELLS FARGO BANK and/or WELLS FARGO ADVISORS as a Regional Bank Private Banker and an Assistant Vice President at Wells Fargo Regional Bank in Fort Lauderdale, Florida.

52.     As a Regional Bank Private Banker and an Assistant Vice President for WELLS FARGO BANK and/or WELLS FARGO ADVISORS, upon information and belief, BERMUDEZ's duties and responsibilities included, without limitation, providing advice to customers; servicing customer relationships and acting as the customer relationship manager; speaking and meeting with customers at the bank location; referring customers to other segments of WELLS FARGO BANK and its affiliates; cross-selling products and services; developing and maintaining relationships with WELLS FARGO BANK's partners and affiliates; and opening accounts for clients.

53.     Defendant BENJAMIN RAFAEL, at all relevant times herein alleged, was an agent, officer, and manager with WFA and WFB, acting for the benefit of both entities per the instruction of parent, Wells Fargo & Company.

54.    At all relevant times until June 18, 2015, RAFAEL was employed by WELLS FARGO BANK as a personal banker in Miami, Florida. As a personal banker at WELLS FARGO BANK, RAFAEL's duties and responsibilities included, without limitation, providing advice to customers; servicing customer relationships; speaking and meeting with customers at the bank location; selling retail banking products and services to customers and prospective customers; referring customers to other segments of WELLS FARGO BANK and its affiliates; cross-selling all products and services; developing and maintaining relationships with WELLS FARGO BANK's partners and affiliates; reviewing and processing credit and loan applications; opening, maintaining, and managing deposit accounts for clients; and managing customer portfolios.

55.    BERMUDEZ and RAFAEL were co-employees and agents of WFA and WFB, two affiliated entities wholly controlled by parent Wells Fargo & Company.  As described herein, RAFAEL and BERMUDEZ acted jointly on behalf of WFA and WFB to secure Plaintiff's transfer of funds into a WFB account.  RAFAEL and BERMUDEZ in their role as financial advisors through WFA directed Plaintiff to deposit funds in a WFB account.  Upon information and belief, RAFAEL and BERMUDEZ, and all similarly situated employees of WFA were a part of a larger Wells Fargo & Company corporate structure which controlled both WFA and WFB, and RAFAEL and BERMUDEZ thus acted jointly for the benefit of both WFA and WFB at all times herein alleged.

56.    Commencing in March, 2015, Defendant WFA, by and through its employees and agents RAFAEL and BERMUDEZ, and DOES 1 through 50, inclusive, and RAFAEL and BERMUDEZ individually, and each of them, made the following misrepresentations of material fact to Plaintiff and Plaintiff's representatives:

a.    Defendants WVP and FCP were legitimate film finance companies that were engaged in the business of co-financing films, and had successfully done so in the past through the advice and assistance of WFA (WFA representatives RAFAEL and BERMUDEZ, physically located in South Florida,

made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

b.      Defendants WVP and FCP, through the direction and assistance of WFA,  maintained credible accounts with WFA and WFB (WFA representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives (Terry Leonard, Michael Pierce, and Paul Martino) on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

c.      Defendants WVP and FCP maintained significant assets in their WFA and WFB accounts (WFA representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

d.      Defendants WVP and FCP had utilized WFA and WFB accounts to co-finance numerous films (WFA representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

e.      WFA intended to financially back the obligations of WVP and FCP under the Funding Agreement (WFA representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the

singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

f.      WFA had previously facilitated joint-contributions for film financing agreements involving FCP and WVP (WFA representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

g.      WFA would work together with WFB (it's sister company) to would keep all funds deposited into the joint-account maintained in San Francisco secure (WFA representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

h.      WFA would work together with WFB to ensure there would be no withdrawal from the joint-account maintained in San Francisco without the written consent of Plaintiff (WFA representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

i.      On June 2, 2015, RAFAEL sent an e-mail from his WFB e-mail address, Banjamin.Rafael@wellsfargo.com to Plaintiff stating: "Please use this e-mail to confirm with your team that the US $1.25M has been received, Forrest Capital has matched the contribution and the funds are in the master account.  We are finishing up the requirements and have been delayed briefly as Mr. McConley was tied up with some family issues that I believe he shared.  We are finalizing a

few small things that we the bank need before we can send out the cards.  Mr. McConley and I are meeting just after the branch closes so we can finalize those requirements.  We will email you the signature cards tomorrow.  Please know that all is in line and set and that the delays were compounded by the partners being in Cannes.  We appreciate your patience in this matter.  Benjamin Rafael, Personal Banker."  (See Exhibit "B" to FAC, emphasis added).

       j.     WFB maintained a total of $2,513,320.02 in the San Francisco account designated to be for the benefit of the Film.  (On September 14, 2015, MCCONLEY and RAFAEL had a phone conversation with Plaintiff's representative Michael Pierce wherein RAFAEL and MCCONLEY stated that a total amount of $2.5 million (including the WVP/FCP contribution) existed and was in the secure San Francisco WFB account.  This conversation was followed up by an e-mail from MCCONLEY and RAFAEL to Plaintiff's representative Michael Pierce, cc'ing HERNAN BERMUDEZ at hernan.bermudez@wellsfargo.com stating: "I am working to close our line and set up for funding.  I need you to allow me to finish and reach out to one of my bankers which assist us with closings.  Mr. Hernan Bermudez is one of three relationships helping me.  I will set up a call with you as soon as I have a response of their availability.  Your patience is appreciated and we are on track for the first contribution by the close on Wednesday."  (See e-mail dated September 14, 2015, Exhibit "E" to FAC.)  BERMUDEZ, acting on behalf of WFB, responded to the above referenced e-mail stating: "We can touch base in the morning regarding our schedule…." (See Exhibit "F" to FAC.)  Plaintiff's representative Terry Leonard spoke verbally with RAFAEL after receipt of this BERMUDEZ e-mail, and was again told by RAFAEL that the funds were present and secure in the WFB account.  Mr. Leonard then responded to BERMUDEZ' e-mail at 9:25 a.m. on September 16, 2015 stating: "Hernan I just spoke to your colleague Benjamin who confirmed verbally the amount in the account.  What we

need tomorrow from you, is an e-mail showing proof that there is $2,513,320.02 in the account.  Please send that ASAP."  (See Exhibit "G" to Complaint).  However, BERMUDEZ never responded to Plaintiff.

57.    Therefore, WFA, through the actions of its representatives BERMUDEZ and RAFAEL, was instrumental in the conversion of Plaintiff's money.

58.    As is described in detail in paragraph 34, supra, Plaintiff is not the only victim of the herein described scheme of Defendants, which WFB and WFA have had knowledge of since at least 2014.  Since 2014, WFA and WFB and some combination of Van Eman, McConley, and FCP have been sued in numerous actions involving BERMUDEZ and RAFAEL.

59.    As is described in paragraph 35, supra, WFA and its employees were involved in each of the loans that precipitated these lawsuits.  In addition to the active participation of their officers and employees in the FCP parties' conversion of other victim's funds, WFA and WFB have been on actual notice of the allegations of fraud and conversion against FCP by virtue of being named defendants in the *Buzbee* case, supra.  On November 19, 2014, WFA and WFB were added as defendants in the *Buzee* case, supra.

60.    As is described in paragraph 36, supra, despite the actual knowledge of WFA   that FCP was using accounts in the names of FCP to defraud lenders and convert funds, WFA failed to sever its relationships with FCP and McConley, close their accounts in a timely manner, and/or prevent FCP and McConley from opening new accounts with WFA / WFB.

61.    Upon information and belief, on November 6, 2015, WFA and / or WFB terminated BERMUDEZ' employment.  In reporting BERMUDEZ' termination to FINRA, WFA provided the following reason: "Did not follow Bank's procedures relating to the opening of business bank accounts.  Specifically, relied upon information received by email instead of speaking with or meeting with the account owners."

62.    Upon information and belief, WFB and / or WFA also terminated

18

RAFAEL'S employment after the events herein alleged.

63.     Upon information and belief, BERMUDEZ and RAFAEL opened the bank account at issue in this lawsuit.

64.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants DOES 1 through 50, inclusive, authorized or ratified Defendants WFA, BERMUDEZ, and HERNANDEZ' careless, negligent, reckless, and malicious conduct by failing to inform, notify, or report to PLAINTIFF or its agents, servants, employees, successors in interest, and/or joint venturers of the aforelisted misrepresentations of material fact made by Defendants WFA, BERMUDEZ, and HERNANDEZ.

65.     The aforelisted misrepresentations of material fact made by Defendants, and each of them, were in fact false, and none of the Plaintiff's funds were ever matched and there never existed $2,500,000 in the WFB bank account; instead, the funds were wrongfully taken from the WFB bank account by Defendants.

66.     When Defendants made the aforelisted misrepresentations of material fact, they knew them to be false and made these representations with the intent to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance thereon in the manner herein alleged, or with the expectation Plaintiff would so act.

67.     Plaintiff, at the time the aforelisted misrepresentations of material fact were made by Defendants, and at the time Plaintiff took the actions herein alleged, were ignorant of the falsity of the aforelisted misrepresentations of material fact made by Defendants and believed them to be true.   In reliance on the aforelisted misrepresentations of material fact, Plaintiff were induced to and did enter into agreements with Defendants, place money in the designated San Francisco WFB bank account, and provided investment for the Film.  Had Plaintiff known the actual facts, Plaintiff would not have taken such actions, nor made any investments.

68.     Plaintiff's reliance on the aforelisted misrepresentations of material fact made by Defendants was justified because Plaintiff was ignorant of the falsity of said

misrepresentations of material fact.

69.     As a direct and proximate cause of the unlawful acts and conduct alleged herein, Plaintiff has been damaged in an amount to be proven at trial.

70.     The outrageous conduct of Defendants WFA, RAFAEL, BERMUDEZ, and DOES 1 through 50, inclusive, and each of them, as described herein, was done with malice, fraud, and/or oppression and with a willful and conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive and/or exemplary damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### [FRAUD AND INTENTIONAL DECEIT (COUNT 3)]

**(By Plaintiff against WELLS FARGO BANK, N.A., BENJAMIN RAFAEL, HERNAN BERMUDEZ, and DOES 1 through 50, inclusive)**

71.     Plaintiff re-allege and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

72.     Upon information and belief, Wells Fargo & Company, a Delaware Corporation (not a party to this lawsuit), purposefully created a multifaceted corporate structure, including a financial advisory branch, WFA, and a banking branch, WFB. Upon information and belief, WFA and WFB are wholly controlled by Wells Fargo & Company.  Upon information and belief, WFA and WFB employees, including specifically BENJAMIN RAFAEL and HERNAN BURMUDEZ customarily and regularly interact with each other, and conduct business between their sister entities, for the benefit of their parent, Wells Fargo & Company.

73.     Wells Fargo & Company offers private banking and wealth management services to high net worth clients through its Wells Fargo Private Bank segment.

74.     Both WFA and WFB provide services to clients of the Wells Fargo Private Bank segment.

75.     WFB offers and provides brokerage products and finical advising for

20

clients of Wells Fargo Private Bank.

76.     Defendant BENJAMIN RAFAEL, at all relevant times herein alleged, was an agent, officer, and manager with WFA and WFB, acting for the benefit of both entities per the instruction of parent, Wells Fargo & Company.

77.     At all relevant times until June 18, 2015, RAFAEL was employed by WELLS FARGO BANK as a personal banker in Miami, Florida. As a personal banker at WELLS FARGO BANK, RAFAEL's duties and responsibilities included, without limitation, providing advice to customers; servicing customer relationships; speaking and meeting with customers at the bank location; selling retail banking products and services to customers and prospective customers; referring customers to other segments of WELLS FARGO BANK and its affiliates; cross-selling all products and services; developing and maintaining relationships with WELLS FARGO BANK's partners and affiliates; reviewing and processing credit and loan applications; opening, maintaining, and managing deposit accounts for clients; and managing customer portfolios.

78.     Defendant HERNAN BERMUDEZ has since February 2011, and at all times herein alleged, been a licensed broker registered with FINRA through WELLS FARGO ADVISORS.  At all relevant times herein alleged, BERMUDEZ was an agent, officer, and manager with WFA and WFB, acting for the benefit of both entities per the instruction of parent, Wells Fargo & Company.   BERMUDEZ was employed by and/or acted as an agent of WELLS FARGO BANK and/or WELLS FARGO ADVISORS as a Regional Bank Private Banker and an Assistant Vice President at Wells Fargo Regional Bank in Fort Lauderdale, Florida.

79.     As a Regional Bank Private Banker and an Assistant Vice President for WELLS FARGO BANK and/or WELLS FARGO ADVISORS, upon information and belief, BERMUDEZ's duties and responsibilities included, without limitation, providing advice to customers; servicing customer relationships and acting as the customer relationship manager; speaking and meeting with customers at the bank location; referring customers to other segments of WELLS FARGO BANK and its affiliates;

cross-selling products and services; developing and maintaining relationships with WELLS FARGO BANK's partners and affiliates; and opening accounts for clients.

80.    BERMUDEZ and RAFAEL were co-employees and agents of WFA and WFB, two affiliated entities wholly controlled by parent Wells Fargo & Company.  As described herein, RAFAEL and BERMUDEZ acted jointly on behalf of WFA and WFB to secure Plaintiff's transfer of funds into a WFB account.  RAFAEL and BERMUDEZ in their role as financial advisors through WFA directed Plaintiff to deposit funds in a WFB account.   Upon information and belief, RAFAEL and BERMUDEZ, and all similarly situated employees of WFA were a part of a larger Wells Fargo & Company corporate structure which controlled both WFA and WFB, and RAFAEL and BERMUDEZ thus acted jointly for the benefit of both WFA and WFB at all times herein alleged.

81.    Commencing in March, 2015, Defendant WFB, by and through its employees and agents RAFAEL and BERMUDEZ, and DOES 1 through 50, inclusive, and RAFAEL and BERMUDEZ individually, and each of them, made the following misrepresentations of material fact to Plaintiff and Plaintiff's representatives:

    a.    Defendants WVP and FCP were legitimate film finance companies that were engaged in the business of co-financing films, and had successfully done so in the past through the advice and assistance of WFB (WFB representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

    b.    Defendants WVP and FCP, through the direction and assistance of WFB,  maintained credible accounts with WFA and WFB (WFB representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives (Terry Leonard, Michael

Pierce, and Paul Martino) on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

c. Defendants WVP and FCP maintained significant assets in their WFA and WFB accounts (WFB representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

d. Defendants WVP and FCP had utilized WFA and WFB accounts to co-finance numerous films (WFB representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

e. WFB intended to financially back the obligations of WVP and FCP under the Funding Agreement (WFB representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

f. WFB had previously facilitated joint-contributions for film financing agreements involving FCP and WVP (WFB representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

FIRST AMENDED COMPLAINT FOR DAMAGES

g.    WFB would work together with WFA (it's sister company) to would keep all funds deposited into the joint-account maintained in San Francisco secure (WFB representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

h.    WFB would work together with WFA to ensure there would be no withdrawal from the joint-account maintained in San Francisco without the written consent of Plaintiff (WFB representatives RAFAEL and BERMUDEZ, physically located in South Florida, made such representations verbally to Plaintiff's representatives Terry Leonard, Michael Pierce, and Paul Martino on numerous telephone conversations occurring between March, 2015 and the singing of the Funding Agreement (Exhibit "A" to FAC) on May 14, 2015);

i.    On June 2, 2015, RAFAEL sent an e-mail from his WFB e-mail address, Banjamin.Rafael@wellsfargo.com to Plaintiff stating: "Please use this e-mail to confirm with your team that the US $1.25M has been received, Forrest Capital has matched the contribution and the funds are in the master account.  We are finishing up the requirements and have been delayed briefly as Mr. McConley was tied up with some family issues that I believe he shared.  We are finalizing a few small things that we the bank need before we can send out the cards.  Mr. McConley and I are meeting just after the branch closes so we can finalize those requirements.  We will email you the signature cards tomorrow.  Please know that all is in line and set and that the delays were compounded by the partners being in Cannes.  We appreciate your patience in this matter.  Benjamin Rafael, Personal Banker."  (See Exhibit "B" to FAC, emphasis added).

j.    WFB maintained a total of $2,513,320.02 in the San Francisco account designated to be for the benefit of the Film.  (On September 14, 2015,

MCCONLEY and RAFAEL had a phone conversation with Plaintiff's representative Michael Pierce wherein RAFAEL and MCCONLEY stated that a total amount of $2.5 million (including the WVP/FCP contribution) existed and was in the secure San Francisco WFB account.  This conversation was followed up by an e-mail from MCCONLEY and RAFAEL to Plaintiff's representative Michael Pierce, cc'ing HERNAN BERMUDEZ at hernan.bermudez@wellsfargo.com stating: "I am working to close our line and set up for funding.  I need you to allow me to finish and reach out to one of my bankers which assist us with closings.  Mr. Hernan Bermudez is one of three relationships helping me.  I will set up a call with you as soon as I have a response of their availability.  Your patience is appreciated and we are on track for the first contribution by the close on Wednesday."  (See e-mail dated September 14, 2015, Exhibit "E" to FAC.)  BERMUDEZ, acting on behalf of WFB, responded to the above referenced e-mail stating: "We can touch base in the morning regarding our schedule…." (See Exhibit "F" to FAC.)  Plaintiff's representative Terry Leonard spoke verbally with RAFAEL after receipt of this BERMUDEZ e-mail, and was again told by RAFAEL that the funds were present and secure in the WFB account.  Mr. Leonard then responded to BERMUDEZ' e-mail at 9:25 a.m. on September 16, 2015 stating: "Hernan I just spoke to your colleague Benjamin who confirmed verbally the amount in the account.  What we need tomorrow from you, is an e-mail showing proof that there is $2,513,320.02 in the account.  Please send that ASAP."  (See Exhibit "G" to Complaint).  However, BERMUDEZ never responded to Plaintiff.

82.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants DOES 1 through 50, inclusive, authorized or ratified Defendants WFB, BERMUDEZ, and HERNANDEZ' careless, negligent, reckless, and malicious conduct by failing to inform, notify, or report to PLAINTIFF or its agents, servants, employees, successors in interest, and/or joint venturers of the aforelisted

misrepresentations of material fact made by Defendants WFA, BERMUDEZ, and HERNANDEZ.

83.     Therefore, WFB, through the actions of its representatives BERMUDEZ and RAFAEL, was instrumental in the conversion of Plaintiff's money.

84.     As is described in detail in paragraph 34, supra, Plaintiff is not the only victim of the herein described scheme of Defendants, which WFB and WFA have had knowledge of since at least 2014.  Since 2014, WFB and WFA and some combination of Van Eman, McConley, and FCP have been sued in numerous actions involving BERMUDEZ and RAFAEL.

85.     As is described in paragraph 35, supra, WFB and its employees were involved in each of the loans that precipitated these lawsuits.  In addition to the active participation of their officers and employees in the FCP parties' conversion of other victim's funds, WFB has been on actual notice of the allegations of fraud and conversion against FCP by virtue of being named defendants in the *Buzbee* case, supra.  On November 19, 2014, WFB and WFA were added as defendants in the *Buzee* case, supra.

86.     As is described in paragraph 36, supra, despite the actual knowledge of WFB  that FCP was using accounts in the names of FCP to defraud lenders and convert funds, WFB failed to sever its relationships with FCP and McConley, close their accounts in a timely manner, and/or prevent FCP and McConley from opening new accounts with WFB / WFA.

87.     Upon information and belief, on November 6, 2015, WFB and / or WFA terminated BERMUDEZ' employment.  In reporting BERMUDEZ' termination to FINRA, WFA provided the following reason: "Did not follow Bank's procedures relating to the opening of business bank accounts.  Specifically, relied upon information received by email instead of speaking with or meeting with the account owners."

88.     Upon information and belief, WFB and / or WFA also terminated RAFAEL'S employment after the events herein alleged.

89.     Upon information and belief, BERMUDEZ and RAFAEL opened the bank account at issue in this lawsuit.

90.     The aforelisted misrepresentations of material fact made by Defendants, and each of them, were in fact false, and none of the Plaintiff's funds were ever matched and there never existed $2,500,000 in the WFB bank account; instead, the funds were wrongfully taken from the WFB bank account by Defendants.

91.     When Defendants made the aforelisted misrepresentations of material fact, they knew them to be false and made these representations with the intent to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance thereon in the manner herein alleged, or with the expectation Plaintiff would so act.

92.     Plaintiff, at the time the aforelisted misrepresentations of material fact were made by Defendants, and at the time Plaintiff took the actions herein alleged, were ignorant of the falsity of the aforelisted misrepresentations of material fact made by Defendants and believed them to be true.   In reliance on the aforelisted misrepresentations of material fact, Plaintiff were induced to and did enter into agreements with Defendants, place money in the designated San Francisco WFB bank account, and provided investment for the Film.  Had Plaintiff known the actual facts, Plaintiff would not have taken such actions, nor made any investments.

93.     Plaintiff's reliance on the aforelisted misrepresentations of material fact made by Defendants was justified because Plaintiff was ignorant of the falsity of said misrepresentations of material fact.

94.     As a direct and proximate cause of the unlawful acts and conduct alleged herein, Plaintiff has been damaged in an amount to be proven at trial.

95.     The outrageous conduct of Defendants WFB, RAFAEL, BERMUDEZ, and DOES 1 through 50, inclusive, and each of them, as described herein, was done with malice, fraud, and/or oppression and with a willful and conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff.  By reason thereof, Plaintiff is entitled to punitive and/or exemplary damages in an amount

27

to be proven at trial.

## FOURTH CAUSE OF ACTION

### [NEGLIGENT MISREPRESENTATION]

**(By Plaintiff Against All Defendants and DOES 1 through 50, inclusive)**

96.     Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

97.     Commencing in March, 2015, Defendants WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ, and DOES 1 through 50, inclusive, and each of them, made the following misrepresentations of material fact to Plaintiff and Plaintiff's representatives:

       a.     Defendants WVP and FCP were legitimate film finance companies that were engaged in the business of co-financing of films;

       b.     Defendants WVP and FCP were interested in co-financing the Film with Plaintiff;

       c.     Defendants WVP and FCP maintained credible accounts with WFA and WFB;

       d.     Defendants WVP and FCP maintained significant assets in their WFA and WFB accounts;

       e.     Defendants WVP and FCP had utilized WFA and WFB accounts to co-finance numerous films;

       f.     WFB and WFA intended to financially back the obligations of WVP and FCP under the Funding Agreement;

       g.     WFB and WFA had previously facilitated joint-contributions for film financing agreements involving FCP and WVP;

       h.     WFB and WFA would keep all funds deposited into the joint-account maintained in San Francisco secure;

       i.     WFB and WFA would not allow any withdrawal from the joint-account maintained in San Francisco without the written consent of Plaintiff;

28

j.     WFB received a matching contribution of funds by WVP and FCP pursuant to the Funding Agreement into its San Francisco account; and

k.     WFB maintained a total of $2,513,320.02 in the San Francisco account designated to be for the benefit of the Film.

98.     WFA additionally made the misrepresentations to Plaintiff described in paragraph 56 herein.

99.     WFB additionally made the misrepresentations to Plaintiff described in paragraph 81 herein.

100.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants DOES 1 through 50, inclusive, authorized or ratified Defendants WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ'S careless, negligent, reckless, and malicious conduct by failing to inform, notify, or report to Plaintiff or its agents, servants, employees, successors in interest, and/or joint venturers of the aforelisted misrepresentations of material fact made by Defendants WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ.

101.     When Defendants WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ made the aforelisted misrepresentations of material fact, they had no reasonable ground for believing them to be true.  Defendants WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ were aware that the aforelisted misrepresentations of material fact were false at the time they were made.

102.     Defendants WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ, made the aforelisted misrepresentations of material fact with the intention of inducing Plaintiff to act in reliance on said misrepresentations in the manner alleged, or with the expectation that Plaintiff would so act.

103.     As a direct and proximate cause of the unlawful acts and conduct alleged herein, Plaintiff has been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### [UNFAIR BUSINESS ACTS UNDER

### CALIFORNIA *BUSINESS & PROFESSIONS CODE* § 17200]

**(By Plaintiff Against All Defendants and DOES 1 through 50, inclusive)**

104.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

105.   At all times alleged herein, WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ, and DOES 1 through 50, inclusive, have engaged in unfair business acts as defined in California *Business & Professions Code* § 17200.  Such unfair business acts and practices include, but are not limited to, making false and misleading statements in order to induce Plaintiff to enter into Funding Agreement and deposit funds into the designated San Francisco WELLS FARGO account and failing to comply with California *Business & Professions Code* § 17500, *et seq.*, which prohibits misleading statements.

106.   Defendants WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ, and DOES 1 through 50, inclusive, uniform conduct in making false and misleading statements to Plaintiff constitutes unfair, fraudulent, and deceptive business practices, within the meaning of  California *Business & Professions Code* § 17200, *et seq.*

## SIXTH CAUSE OF ACTION

### [BREACH OF CONTRACT]

**(By Plaintiff Against Defendants WVP, FCP and DOES 1 through 50, inclusive)**

107.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

108.   Plaintiff entered into a written financing agreement with FCP and WVP dated May 14, 2015 (hereinafter "Funding Agreement," attached hereto as Exhibit "A"). Plaintiff performed all duties and conditions of Funding Agreement.

109.   Defendants breached the Funding Agreement by, amongst other things:

a.   Misrepresenting their assets held in WFB accounts;

b.   Falsely representing that they would match Plaintiff's funds contribution;

c.   Failing to contribute any funding to the San Francisco WFB account; and

d.   Withdrawing Plaintiff's $1,250,000 contribution into the WFB account for Defendants' benefit.

110.   As a direct and proximate cause of the unlawful acts and conduct alleged herein, Plaintiff has been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
## [CONVERSION]
**(By Plaintiff Against Defendants WVP, FCP, VAN EMAN, MCCONLEY and DOES 1 through 50, inclusive)**

111.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

112.   Plaintiff entered into a written financing agreement with FCP and WVP dated May 14, 2015 (hereinafter "Funding Agreement).   Pursuant to the Funding Agreement, Plaintiff was instructed to and did deposit $1,250,000 into the FORREST CAPITAL & CO. Wells Fargo bank account, account number 1644585075, at Wells Fargo Bank, 420 Montgomery Street, San Francisco, CA 94104.   Defendants FCP and WVP were to provide matching contributions with collateral over which WELLS FARGO had a security interest.

113.   Unbeknownst to Plaintiff, WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ knew all along that there was to be no matching contribution of Plaintiff's capital.

114.   Defendants wrongfully took possession of Plaintiff's contribution when they removed the entire amount of Plaintiff's contribution from the WELLS FARGO account for their own benefit and refused to return it.

31

115.   As a result of Defendants' wrongful possession of Plaintiff's property, Plaintiff has been damaged in an amount to be proved at trial.

## EIGHTH CAUSE OF ACTION

### [AIDING AND ABETTING CONVERSION]

**(By Plaintiff Against Defendants WFA, WFB, BERMUDEZ, AND RAFAEL and DOES 1 through 50, inclusive)**

116.   Plaintiff re-alleges and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

117.   Plaintiff entered into a written financing agreement with FCP and WVP dated May 14, 2015 (hereinafter "Funding Agreement).   Pursuant to the Funding Agreement, Plaintiff was instructed to and did deposit $1,250,000 into the FORREST CAPITAL & CO. Wells Fargo bank account, account number 1644585075, at Wells Fargo Bank, 420 Montgomery Street, San Francisco, CA 94104.   Defendants FCP and WVP were to provide matching contributions with collateral over which WELLS FARGO had a security interest.

118.   Unbeknownst to Plaintiff, WVP, VAN EMAN, FCP, MCCONLEY, WFB, WFA, RAFAEL, and BERMUDEZ knew all along that there was to be no matching contribution of Plaintiff's capital.

119.   As fully explained herein, especially in paragraphs 34-36, supra, WFB and WFA were explicitly aware of and directly participated in the scheme to defraud and convert Plaintiff's assets, and through the actions and of WFA and WFB employees BERMUDEZ and RAFAEL (acting in the course and scope of their employment), WFA and WFB directly aided and abetted in the conversion of Plaintiff's funds from the WFB bank account.

120.   At all times herein, after Plaintiff deposited the $1,250,000 in the WFB account, Plaintiff had the immediate right to possess the money.   The $1,250,000 is the personal property of Plaintiff.

121.   Defendants   wrongfully   took   possession   of   Plaintiff's   $1,250,000

32

contribution when they removed the entire amount of Plaintiff's contribution from the WFB account for their own benefit and refused to return it.

122. Upon information and belief, WFB and WFA provided substantial assistance to FCP, VAN EMAN, and McConley in their conversation of Plaintiff's $1,250,000 by violating banking regulations, including the "Know Your Customer" requirements of the Bank Secrecy Act.

123. WFB and WFA through their officers and employees while acting within the scope of their employment as well as through their monitoring of employee emails, had knowledge of the conversion of Plaintiff's funds.

124. WFB and WFA, through their officers and employees while acting within the scope of their employment, actively provided substantial assistance to FCP, WVP, VAN EMAN, and McCONLEY in their conversion of Plaintiff's $1,250,000. As more fully described throughout the FAC, WFB and WFA's substantial assistance included, without limitation, vouching for the legitimacy of FCP at meetings and on telephone conversations. In addition WFB provided written assurances to Plaintiff that its loan proceeds would be secure. Further, WFB provided written assurances to Plaintiff that actively concealed Defendants' conversion of the loan proceeds. This concealment, in turn, substantially assisted the Defendants' conversion of the loan proceeds.

125. WFB and WFA provided substantial assistance to FCP, WVP, VAN EMAN, and McCONLEY in their conversion of Plaintiff's $1,250,000 by failing to shut down and/or prevent the opening of accounts in the name of an/or controlled by FCP after receiving actual knowledge that FCP was using its accounts at WFA and WFB to perpetrate a fraudulent film financing scheme to convert lenders' funds.

126. The actions of WFB and WFA described herein were willful, and have directly caused and continue to cause injury and damage to Plaintiff.

127. As a result of Defendants' wrongful possession of Plaintiff's property, Plaintiff has been damaged in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff 818 MEDIA PRODUCTIONS, LLC prays for judgment against all Defendants as follows:

A.     General damages in an amount according to proof;

B.     Special damages in an amount according to proof;

C.     Punitive and/or exemplary damages on causes of action one through three in an amount according to proof;

D.     Attorneys' fees as applicable;

E.     Costs of suit herein; and

F.     For such other and further relief as the Court deems proper.


DATED:  March 6, 2017                    KRAMER HOLCOMB SHEIK LLP


                                        By: /s/ *John Holcomb, Jr.*
                                             JOHN L. HOLCOMB, JR.

                                             Attorney for Plaintiff,
                                             818 Media Productions, LLC

34

## **DEMAND FOR JURY TRIAL**

Plaintiff 818 MEDIA PRODUCTIONS, LLC hereby demands trial by jury as to all causes of action.

DATED:  March 6, 2017                    KRAMER HOLCOMB SHEIK LLP

                                        By: _/s/ John Holcomb, Jr._
                                             JOHN L. HOLCOMB, JR.

                                             Attorney for Plaintiff,
                                             818 Media Productions, LLC